UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NEVA HAMMON, Individually and as Executrix of the Estate of Howard A. Hammon, III, Deceased<br><br>　　　　　　　Plaintiff<br><br>　vs.<br><br>CITY OF MIDDLEBURG HEIGHTS, et al.<br><br>　　　　　　　Defendants | CASE NO. 1:11-cv-02333-JG<br><br>JUDGE JAMES S. GWIN<br><br><br>**PLAINTIFF'S PRETRIAL**<br>**CONFERENCE STATEMENT** |

Plaintiff, Neva Hammon, by and through counsel, submits this Pretrial Statement in advance of the Pretrial Conference scheduled for May 17, 2011.

## I.　INTRODUCTION

This case involves the June 13, 2011 homicide death of Plaintiff's unarmed 41-year-old brother, Howard Hammon, who was tackled to the ground, kicked, kneed, held down, and tasered by four Middleburg Heights police officers at the scene of a minor motor vehicle accident.[1]  The Defendant Officers tasered Howard seven times, including simultaneous applications, for durations of 23 seconds, 16 seconds, 10 seconds, 8 seconds, 7 seconds, and 5 seconds twice.

Once cuffed, officers left Howard prone in the grass on the side of the road. EMS personnel arrived to find Mr. Hammon in that position, hands cuffed behind his back, with no pulse or other vital signs.

---

[1] Portions of the encounter were captured by a video camera mounted on the dashboard of Defendant Eric Burgett's cruiser.  Defendant Burgett did not, however, activate the audio recording equipment. A copy of the video, marked as Exhibit A, is being filed manually with the Clerk's office.

## II. STATUS OF DISCOVERY

Since the February 9, 2012 Case Management Conference, the parties have exchanged initial disclosures, written discovery, and disclosures of the identities of their respective expert witnesses. The parties have conducted the depositions of five Middleburg Heights police officers, Defendant Chief John Maddox, Plaintiff Neva Hammon, and Dr. Erica J. Armstrong from the Cuyahoga County Medical Examiner's Office ("ME"). Dr. Thomas P. Gilson's (ME) deposition was scheduled for last week, but the doctor canceled. Additionally, the parties have spoken and issued a joint request to the United States Attorney's Office for the Northern District of Ohio seeking information and the deposition(s) of appropriate FBI personnel who analyzed the three Taser® weapons at issue. The parties are awaiting a response.

On April 26, 2012, the Defendants filed a Motion to Continue Discovery and Dispositive Motion Deadlines (Docket No. 32). On May 7, 2012, the Court ordered dispositive discovery complete by May 28, 2012, and dispositive motions filed by June 4, 2012, with responses due June 18, 2012, and replies due June 25, 2012. The Court has ordered a two-week standby period for trial beginning October 8, 2012.

## III. PLAINTIFF'S CLAIMS

Plaintiff asserts § 1983 claims for excessive force in violation of the Fourth Amendment, and for violation of Mr. Hammon's Fourteenth Amendment right to prompt and adequate medical care once in the custody of the Defendants. Plaintiff also asserts *Monell* claims alleging an unconstitutional policy/failure to train concerning the reasonable use of Tasers®, and the dangers of prone positioning and positional

asphyxia. Finally, Plaintiff asserts pendant state law claims for wrongful death and assault and battery.

## IV. THE FACTS OF RECORD

Defendant Officer David Holderbaum, a 33-year-old, 6' 2½", 230-lb. former collegiate linebacker, confronted Howard at the scene of a car accident shortly after 11:00 PM on June 13, 2011. After Howard affirmed that he was in possession of a marijuana pipe, Defendant Holderbaum frisk searched Mr. Hammon. Howard was unarmed.

Howard stated he wanted a cigarette and reached for the trunk of Defendant Holderbaum's cruiser, where the contents of his pockets had been emptied. Defendant Holderbaum, with the assistance of Defendant Burgett, went hands-on with Mr. Hammon, pushing him up against the side of Holderbaum's cruiser. Claiming Howard refused to be cuffed, the officers quickly took Mr. Hammon to the pavement and drive-stunned him with a Taser®. When Howard attempted to get up, he was tasered twice more (probe deployments). Howard stumbled and fell to the ground in the grass on the side of the road.

While on the ground on his stomach, officers collectively tasered Mr. Hammon numerous times (probe deployments and drive stuns), repeatedly kneed him in the ribcage, kicked him and/or stood on his left shoulder, held/pushed his head onto the ground with two hands while pushing a shin in his upper back, mounted his waist/thigh area, and cuffed his hands behind his back. Two of the Defendant Officers were themselves tasered when they came into contact with the probe wires connected to Mr. Hammon while he was on the ground on his stomach.

Once cuffed, Howard, an obese 6'1" man, was not moving and could be heard making a snoring noise.  The Defendant Officers never rolled him over or otherwise repositioned him off his stomach.  By the time EMS arrived, Howard was dead, lying prone in the grass with his hands cuffed behind his back.

The Federal Bureau of Investigation ("FBI") analyzed the three Taser® weapons used against Howard.  The data demonstrate seven applications:  four by Defendant Burgett (23, 10, 7, and 5 seconds); two by Defendant Holderbaum (8 and 5 seconds); and one by Defendant Joseph Duff (16 seconds).  And while the defense has suggested the Taser® guns failed, or were not effective during each application, each of the units was determined to have been operating properly by the FBI.  The Defendant Officers have each testified they cannot refute the data.  Defendant Burgett still does not know how many times he tasered Howard Hammon, or for how long.

The Defendants seemingly attempt to justify the Officers' attack on the basis that, although not armed, Howard was a "big guy" who, by allegedly resisting being cuffed and then trying to get up after he was tackled to the ground, presented some imminent threat to the safety of the Officers and others.  Howard, however, voiced no threats, did not try to flee the scene, and never punched, kicked, hit, or came into contact with anyone.  Having just been in a car crash and potentially under the influence of alcohol, Howard was, as Defendant Holderbaum reported, "disoriented and/or confused."  As for his size, Howard was an obese (276 lbs.) 6'1" on autopsy as of June 14, 2011. The four Defendant Officers were 5'9", 220 lbs., 5'10", 200 lbs., 5'10", 220 lbs., and 6' 2½", 230 lbs., respectively.

4

Howard Hammon posed no threat at all, let alone the type of threat that would warrant such a brutal pummeling at the hands of four police officers.  Furthermore, positioning and leaving Howard prone with his hands cuffed behind his back for approximately 6-10 minutes, which itself constitutes a use of force subject to the Fourth Amendment's reasonableness requirements, particularly after being tasered, trampled, and heard making a snoring noise while not moving, is indefensible.

On September 1, 2011, the ME ruled Howard's death a Homicide and issued the official cause of death as "Sudden death in association with physical altercation, prone positioning with handcuffing, intoxication by the combined effects of ethanol, opiates, and cannabinoids, and cardiac hypertrophy."  The ME concluded the deployment of tasers in the physical altercation.  "The cause of death and the manner and mode in which the death occurred, as delivered by the [ME]… shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death . . . ."[2]  R.C. § 313.19.  The ME's legally accepted cause of death ruling cannot be rebutted absent competent, credible evidence to the contrary.

With respect to the *Monell* claims, the evidence demonstrates, including admissions at deposition, that Defendants' Taser® policy provides no limit or guidance as to the duration or number of any applications.  Rather, Chief Maddox and the Defendant Officers testified that the Taser® trigger may be pulled as many times and depressed for as long as it takes until a subject submits – a position directly at odds with

---

[2] Chief Maddox spoke to and relied on the ME's findings.  He testified that he accepts the ME's official cause of death ruling in this case.  Now faced with a lawsuit, and despite the Chief's testimony, however, the Defendants, for the first time, have hired numerous medical experts in an effort to discredit the ME's findings and will apparently claim excited delirium.

5

accepted safe practices and safety warnings issued by Taser International, the manufacturer that certifies officers in the safe and proper use of its weapons.

Chief Maddox testified it is his responsibility to issue policies and procedures and train officers on the dangers associated with prone positioning and positional asphyxia. There are, however, no policies, or procedures, or training at the Middleburg Heights Police Department governing the safe positioning of a handcuffed subject, or the dangers of positional asphyxia, although the Chief is now considering them.  The policies and procedures in effect are, in large measure, those that were in effect when Chief Maddox assumed his position almost 30 years ago, prior to the dangers of prone positioning and positional asphyxia becoming widely known throughout the law enforcement community.

Howard Hammon was pronounced dead shortly before midnight on June 13, 2011.  By sometime before 4:00 PM on June 14, 2011, Chief Maddox had completed a "review" of the encounter at issue.  He never interviewed any of the Defendant Officers. He never reviewed the data from the Tasers®, which was never downloaded by anyone at the Middleburg Heights Police Department.  Incredibly, however, Chief Maddox unilaterally determined that no investigation was necessary and ratified the Defendant Officer's conduct.  Indeed, no investigation into Howard Hammon's death has ever been performed by anyone.

Much like Chief Maddox did when he invited television reporters into his office the day after Howard's death, showing camera crews a privileged LEADS printout, the overwhelming majority of Plaintiff Neva Hammon's hours-long deposition focused on

irrelevant extraneous allegations concerning Mr. Hammon's past, including criminal history, about which none of the Defendant Officers had knowledge on June 13, 2011.

## V. SETTLEMENT NEGOTIATIONS

To date, no demands or offers of settlement have been tendered by either party.

Respectfully submitted,

s/ Nicholas A. DiCello
DENNIS R. LANSDOWNE (0026036)
NICHOLAS A. DICELLO (0075745)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*dlansdowne@spanglaw.com*
*ndicello@spanglaw.com*

***Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of May 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

| | |
|---|---|
| TODD M. RASKIN, ESQ.<br>JULIE A. BICKIS, ESQ.<br>**MAZANEC, RASKING**<br>**& RYDER CO., L.P.A.**<br>100 Franklin's Row<br>34305 Solon Road<br>Cleveland, OH 44139<br>*traskin@mrrlaw.com*<br>*jbickis@mrrlaw.com* | *Counsel for Defendants,*<br>*City of Middleburg Heights,*<br>*Officer David L. Holderbaum,*<br>*Officer Eric J. Burgett, Officer*<br>*Joseph Duff, John W. Maddox, Jr.,*<br>*and Officer Raymond Bulka* |

                                                                                 s/ Nicholas A. DiCello
                                                      DENNIS R. LANSDOWNE (0026036)
                                                      NICHOLAS A. DICELLO (0075745)
                                                      **SPANGENBERG SHIBLEY & LIBER LLP**
                                                      1001 Lakeside Avenue, Suite 1700
                                                      Cleveland, OH 44114
                                                      (216) 696-3232
                                                      (216) 696-3924 (FAX)
                                                      *dlansdowne@spanglaw.com*
                                                      *ndicello@spanglaw.com*

                                                      *Counsel for Plaintiff*